THORNTON, ordinary, *vs.* WILLIS, trustee.

1. A purchase by an executor at his own sale is not void, and although it may be set aside by any parties injuriously affected thereby, yet until that is done the legal title remains in the purchaser.
2. Where land was so purchased by an executor, his title being only voidable, the property was subject to an execution based on a judgment rendered against him whilst he held the title.
3. The jury having found contrary to the charge, a new trial should have been granted.

Administrators and executors. Judgment. Levy and sale. New trial. Before Judge LAWSON. Greene Superior Court. September Adjourned Term, 1879.

Reported in the opinion.

JOHN C. REED; M. W. LEWIS & SON; J. B. PARK; JOHN A. McWHORTER, for plaintiff in error.

PHILLIP B. ROBINSON, for defendant.

CRAWFORD, Justice.

An execution in favor of the plaintiff in error was levied upon 550 acres of land as the property of Lewis B. Willis, who came forward and as trustee for his wife and children, claimed the same as their trust property, under the ninth item of the will of R. J. Willis, deceased, the same being the legacy given and bequeathed to them by the said will in trust for their sole and separate use. Upon this claim as filed issue was joined, and a trial had, which resulted in a verdict finding the property not subject, when the plaintiff in *fi. fa.* moved for a new trial, which was refused and he excepted.

Among the grounds upon which a new trial was asked were: because the court charged the jury, that if the land was purchased by the defendant in *fi. fa.* at the executor's sale, and he still holds it under said purchase, such title

being only voidable, it would be subject to the execution; such charge being the law, and the jury having found against it.

And further, because the verdict is contrary to law; contrary to evidence; is without evidence; and strongly and decidedly against the weight of the evidence. An examination of the entire record brings us to the conclusion that a new trial should have been granted in this case, because the verdict of the jury was contrary to the charge of the court, as set out in the first ground above specified, as well as contrary to law, as stated in the second.

The views which we have of the law governing the facts in this case, and as applied to the two grounds named, will necessarily dispose of all the questions made in the motion for a new trial.

The contested point upon the trial of this claim case was, who held the legal title to the land at the time when the judgment was rendered, and subsequent thereto up to the time of the levy. The claimant assumed the burden, and undertook to show that it was the trust property of his *cestui que trusts*, bequeathed to them by the ninth item of the will of his father, R. J. Willis, deceased. He supported this title by the fourth item of the will, which directed the executors, he being one of them, to sell all of the estate, both real and personal, and when the actual value was ascertained, to pay over one-sixth part to the testator's wife. By the ninth item, one-sixth part was to be given to the wife and children of the claimant, and he was constituted their trustee.

The final return of the said executors was introduced, which contained a voucher numbered ten, bearing date January 25th, 1871, signed by claimant as trustee and acknowledging the receipt from the executors of $4,350.00, the distributive share due him from the estate as trustee for his wife and children. The claimant then testified that the land levied upon was sold by the executors December 3d, 1867, and bought by them, to keep it from

being sacrificed; they did not pay the money for it. That the voucher No. 10, which had been introduced in the final returns, included his wife's interest in the real and personal property, and that it covered the land levied upon and claimed. The land was bid off at the executor's sale by W. L. Strain, at $3,000.00, which was not paid, but the executors took the title from Strain and accounted for it at $9,000.00 in the final settlement. The three pur- chasers from Strain held the land and worked it jointly for five or six years, and then divided it. That he had paid taxes since the partition on the land as his own; be- fore that time it was given in as Heard and Willis'. The deeds from the executors to Strain, and from Strain to S. D. Heard, J. H. Willis and L. B. Willis were read, and the claimant closed.

The plaintiff in *fi. fa.* introduced the sworn answer of the claimant to a bill in equity, praying, among other things, that the purchase of this land be rescinded, pend- ing in the same court, wherein for certain named reasons, he answered, that fearing that the land would not bring its value, the executors requested W. L. Strain to make it do so, and though being legatees and representatives of lega- tees and largely interested, they were not prohibited by law from buying at their own sale, and making the prop- erty bring its value, especially when the said Strain who purchased was the highest and best bidder. The return of the executors was then introduced, from which it ap- pears that this land was sold December 3d, 1867, to Strain as highest bidder, for $3,000.00 in currency, and return made August 12th, 1868. Two mortgage deeds intro- duced, made and executed by the claimant, in his own indi- vidual name, the first dated May the 2d, 1874, the second September the 8th, 1875, conveying one-third interest in 2284 acres of land, known as the Dover place, to secure his sureties against loss on this identical claim. Upon this latter mortgage, Mrs. Willis, the wife, one of the *cestui que trusts*, relinquishes all right to *homestead, dower*, and

Thornton, ordinary, *vs.* Willis, trustee.

*year's support* in said land.   The guardian's bond of the said Willis was then introduced which was the foundation of the *fi. fa.*, and bearing date May the 4th, 1868.

From this synopsis of the testimony, we see that on the third day of December, 1867, the 550 acres of land here levied upon, and forming originally part of the tract known as the Dover plantation of Richard J. Willis, deceased, was exposed to sale by the executors and bought by William L. Strain at $3,000.00, to whom the executors make a *fee simple* deed.   On the same day he makes and delivers a deed to the same land to S. D. Heard, J. H. Willis and L. B. Willis at the same price.   These parties go into possession and cultivate the land five or six years, pay taxes on it as theirs, then divide it between themselves, when this claimant gives in and pays taxes upon that portion set apart to him as his own up to the time of the trial.

It also appears from the testimony that on the twelfth day of August, 1868, he made his return and showed the sale of the land to Strain at the $3,000.00 , United States currency.   That notwithstanding he says that his receipt for $4,350.00, given January 25th, 1871, was for this land, and as a final settlement, it is not so written, but on the contrary for that much money.   Besides, the land was cultivated by the purchasers for three years after this receipt, and twice by this claimant was it mortgaged as his own, the first time, three years after this settlement, and the second time, nearly five years thereafter; in both instances making the conveyance for one-third interest in 2284 acres in the plantation known as Dover.   So that the 550 acres of land could not have passed to him in 1871 as claimed, but only went to him at the time of the partition between Heard, J. H. Willis and himself.

Most certainly, had it been received as the legacy of the wife under the voucher for the $4,350.00, some allusion should have been made to that fact, some convey-

v 65—13

ance or relinquishment of title by S. D. Heard and J. H. Willis as well as himself, in whom the legal title had been from December 3d, 1867. He would hardly any longer have had it returned for taxes in the names of Heard and Willis, nor would it seem reasonable that after it was partitioned that he should have returned it as his individual property. If this land were received in January, 1871, as his wife and children's legacy, it makes his mortgages in 1874 and 1875 exceedingly inconsistent with that view, for in those papers he recognizes and conveys the one-third interest which he held under the deed of Wm. L. Strain. This is made the more inconsistent by the relinquishment by the wife of her right to *homestead, dower* and *year's support* in the *one-third interest* of the Dover plantation.

It is to be noticed also that the item of the will invoked does not give property in kind to these *cestui que trusts,* but after directing the sale of all the property, real and personal, then one-sixth part is to be received by them. These facts grouped together stagger the belief, and levy too heavy a tax upon the understanding to make it yield to the conviction that this particular land passed to these claimants in the manner asserted.

A purchase made by executors at their own sale is not void, and although it may be set aside by any parties injuriously affected thereby, yet, until that is done, the legal title remains in the purchasers. Parties thus invested with title, can be divested only upon its being set aside in a legal way by a court of competent jurisdiction, or by conveyance from them as provided by law.

Here we have a sale, a deed made by the executors to Strain, the purchaser, and eight month's thereafter a return by them made of the sale, the name of the purchaser given, and the price paid, then a deed from this purchaser to the defendant in this *fi. fa.* and two others, and no conveyance from this defendant being shown, leaves in him, so far as appears, a title to one-third interest, which

·at most is only voidable, and renders the land, under the
·charge of the court, subject to this execution.   The ver-
dict of the jury, therefore, being contrary to the charge
of the court, is contrary to law, and must be set aside and
:a new trial granted.

   Judgment reversed.